**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL J. SHANKS; JOAN E.
SHANKS; GREGORY HIGGINS;
THOMAS FUCHS; COLLEEN FUCHS;
PATRICIA MACKIN; G. KAY COBB;
FRED HARE; JOSEPHINE HARE;
ROBERT GROMAN; LARRY OAS,
                          *Plaintiffs,*

                and

DOUGLAS BYRD; KAREN KINZER-
BYRD; LAUREL HAVENS; KATHLEEN
RILEY; VERN BYRD; MARY BYRD;
RAYMOND KELLEHER; CATHERINE
KELLEHER; GREGORY BYRD;
KAREENA BYRD; JOYCE J.
CLEVELAND; GREGORY MILLS; PATT
A. MILLS; MARY EBERLE; NATE
EBERLE; DR. PHILIP A. LENOUE, SR.;
FRANCIS A. LENOUE; JOANNE
VINCENT; ARNOLD VINCENT;
MARCEEN ZAPPONE; DR. MATTHEW
THOMPSON; TERESE THOMPSON;
ANGELO ROMAN; LENA ROMAN;
WALTER N. WIEBER; SHARON P.
WEIBER; VICKI SIGNER; STEVE
SIGNER; ROBERTA COBB; TODD
COBB; ERICC GINN; GABRIELE
LUEBCKE; L. MONTY BIPPES;

No. 06-35665

D.C. No.
CV-05-00346-JLQ

OPINION

11825

LOGAN NEIGHBORHOOD ASSOCIATION;
LOGAN NEIGHBORHOOD
ORGANIZATION,
                    *Plaintiffs-Appellants,*

                    v.

VINCENT G. DRESSEL; JANET G.
DRESSEL; MIKE PENKUNIS; KEN
JENNESS; LARRY NACARRATO;
DENNIS MCCONKEY; BILL LEONETTI;
DAN SKINDZIER; JOE WIZNER; STEVE
FRANKS; DAVE COMPTON; JOHN
PILCHER; CITY OF SPOKANE,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Washington
Justin L. Quackenbush, Senior Judge, Presiding

Argued and Submitted
February 7, 2008—Seattle, Washington

Filed August 27, 2008

Before: Raymond C. Fisher, Ronald M. Gould and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Fisher

## COUNSEL

Charles A. Cleveland, Spokane, Washington, for the plaintiffs-appellants.

James S. Craven, City Attorney, Milton G. Rowland (argued), Assistant City Attorney, Spokane, Washington, for the Spokane and Spokane employee defendants-appellees; Steven Schneider, Murphy, Bantz & Bury P.S., Spokane, Washington, for the Dressel defendants-appellees.

## OPINION

FISHER, Circuit Judge:

Vincent and Janet Dressel (the "Dressels") are developers who remodel and convert private homes into student residences. A group of homeowners and community organizations (collectively, "Logan Neighborhood"), concerned that the Dressels' construction was degrading and devaluing the

historic character of their neighborhood, brought suit in federal district court seeking injunctive and declaratory relief. Logan Neighborhood principally contends that the city's alleged failure to enforce provisions of its zoning code intended to preserve historic districts violated the Fourteenth Amendment's Due Process Clause. Notwithstanding Logan Neighborhood's understandable concerns about the aesthetics and ambiance of the neighborhood, we conclude it has not stated a federal constitutional claim. Although not preempted by the Fifth Amendment's Takings Clause, *see Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007), Logan Neighborhood's due process claim nonetheless fails. Its other claims also fail, so we affirm the district court's judgment against Logan Neighborhood.

## BACKGROUND[1]

The Mission Avenue Historic District ("District") lies just north of Gonzaga University in the city of Spokane, Washington ("Spokane"). The District is listed on the National Register of Historic Places, a designation conferred by the Secretary of the Interior pursuant to the National Historic Preservation Act of 1966 ("NHPA"). *See* 16 U.S.C. § 470a(a). It is architecturally noteworthy because it includes a "significant collection of late 19th and early 20th century houses located on one of the city's oldest landscaped boulevards." On both sides of Mission Avenue are a "variety of Queen Anne, Four Square, Craftsman, and bungalow style houses that reflect the substantial architecture of the period and the original suburban character of the area."

---

[1]On a motion to dismiss, we take the complaint's allegations of fact as true and construe the complaint in the light most favorable to the plaintiff. *See Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). On a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Galvin v. Hay*, 374 F.3d 739, 745 (9th Cir. 2004).

In March 2005, Spokane granted the Dressels a building permit to construct a duplex addition to 428 East Mission, a clapboard-sided, Four Square house located within the District and inventoried on the District's nomination for the National Register of Historic Places. The Dressels demolished an existing garage on the property and erected a "box-like dormitory building[ ] . . . attached" to the original house.

We summarize the municipal ordinances that Logan Neighborhood alleges have been violated. In 1981, the city amended the Spokane Municipal Code ("SMC") to provide "criteria and procedures for the . . . management of historic landmarks." A newly created Historic Landmarks Commission was charged with the "stewardship of historic and architecturally-significant properties . . . to effect the recognition and preservation of such properties." Two of its responsibilities are relevant here: reviewing applications for "certificates of appropriateness," as provided by SMC 17D.040.200, and reviewing requests for "administrative special permits," as provided by SMC 11.19.270. *See* SMC 17D.040.080(C)(1)(d), (f).

SMC 17D.040.200 requires owners to obtain a certificate of appropriateness for "work that affects the exterior . . . of . . . property within an historic district" or for "development or new construction within an historic district." In evaluating an application for a certificate of appropriateness, the Historic Landmarks Commission "uses the Secretary of the Interior's Standards for Rehabilitation and other general guidelines established and adopted by the commission." SMC 17D.040.210(B). The owner of a property and the Commission may negotiate "different management standards for a specific piece of property," subject to the approval of the Spokane City Council. *See* SMC 17D.040.270-.280.

SMC 11.19.270 provides for special "development standards" that apply "only to those historic districts for which 'defining characteristics' have been prepared by the land-

marks commission, and those structures or properties listed in the National Register of Historic Places." When these standards apply, proposed construction requires an "administrative special permit" from the director of planning services. The Historic Landmarks Commission "make[s] recommendations concerning the approval or denial of the special permit." SMC 17D.040.080(C)(1)(f). It "issues a certificate of appropriateness in support of approval" only if the construction is "of a character which is consistent with the defining characteristics of the historic district, or the U.S. Department of Interior standards in the case of structures or properties listed in the National Register but not located within an historic district." SMC 11.19.270(D)(3)(b). If no action is taken within 35 days, the application is "deemed approved." SMC 11.19.270(D)(3)(c). In any event, the Commission's recommendation "will not otherwise preclude" the director of planning services from reaching a "contrary decision" upon "consideration of other factors of public interest." *Id.*

The Dressels did not seek a certificate of appropriateness or an administrative special permit for their development of the 428 East Mission property, nor has Spokane taken any steps to require them to do so. Logan Neighborhood alleges that the Dressels' construction has compromised the historic character of the Mission Avenue Historic District, resulting in harm to its "cultural, architectural, educational, recreational, aesthetic, historic, and economic interests." Its complaint asserts three claims: (1) that Spokane violated 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment by not enforcing the Spokane Municipal Code; (2) that Spokane and the Dressels violated the National Historic Preservation Act; and (3) that Spokane and Spokane employees violated the Spokane Municipal Code. The district court granted Spokane's motion for summary judgment and the Dressels' motion to dismiss.

## DISCUSSION

We have jurisdiction under 28 U.S.C. § 1291.[2] We review de novo the district court's dismissal for lack of subject matter jurisdiction, dismissal for failure to state a claim and grant of summary judgment. *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 898 (9th Cir. 2006). We may affirm on any ground supported by the record. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) (per curiam).

## I.   Due Process Clause

Logan Neighborhood complains that Spokane and its employees failed to enforce the Spokane Municipal Code and take action "sufficient . . . to protect the Mission Avenue Historic District."[3] Spokane's alleged failure to "discharge its mandatory duties" under the Spokane Municipal Code was, Logan Neighborhood asserts, "arbitrary, capricious, . . . and not in accordance with . . . [the] procedure required by law." By issuing a building permit to the Dressels without first

---

[2]Although we reject Logan Neighborhood's claims on the merits, they are not so "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *See Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974).

[3]We affirm the dismissal of this claim as to the Dressels because Logan Neighborhood has not pursued on appeal its argument that they acted under color of law. *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (explaining that we "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief") (internal quotation marks omitted); *see generally Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982) ("Our cases have . . . insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."); *Howerton v. Gabica*, 708 F.2d 380, 382-83 (9th Cir. 1983) (identifying governmental nexus, joint action, public function and compulsion tests for determining whether action taken by private individual is "under color of law").

requiring that they obtain a certificate of appropriateness and an administrative special permit, Spokane allegedly deprived Logan Neighborhood of constitutionally protected property interests.

As we shall explain, we agree with Logan Neighborhood that the Takings Clause of the Constitution does not invariably preempt a real property owner's challenge under the Due Process Clause. *See Crown Point*, 506 F.3d at 856. A plaintiff must do more than clear this initial hurdle to state a cognizable due process claim, however. Because Spokane's conduct did not deprive Logan Neighborhood of a constitutionally cognizable property interest, we affirm the district court's entry of summary judgment in favor of the city.

## A.    Preemption by the Takings Clause

**[1]** Relying on *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936 (9th Cir. 2004), and *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) (en banc), Spokane asserts that any claim that governmental action caused a diminution in the value of real property involves the Takings Clause, not the Due Process Clause. We have rejected this very argument. *See, e.g.*, *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 484-85 (9th Cir. 2008); *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007); *Crown Point*, 506 F.3d at 856; *Equity Lifestyle Prop., Inc. v. County of San Luis Obispo*, 505 F.3d 860, 870 n.16 (9th Cir. 2007). Expressly repudiating *Squaw Valley*'s suggestion that a "substantive due process challenge brought in the context of regulating use of real property might not be viable," we recently held that "the *Armendariz* line of cases can no longer be understood to create a blanket prohibition of all property-related substantive due process claims." *Action Apartment*, 509 F.3d at 1025 (internal quotation marks omitted). Accordingly, we have no difficulty concluding that the Takings Clause does not "foreclose[ ] altogether" a due process claim like Logan Neighborhood's. *See Crown Point*, 506 F.3d at

857. Logan Neighborhood does not seek compensation for an otherwise proper interference amounting to a taking, but rather invalidation of a land use action that is "so arbitrary or irrational that it runs afoul of the Due Process Clause." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)); *see also Crown Point*, 506 F.3d at 855.

Logan Neighborhood would have us stop there, reverse the district court's judgment and remand for further proceedings. We decline to do so because Logan Neighborhood has not stated a viable claim on either a substantive due process or a procedural due process theory.[4]

## B.   Substantive Due Process

**[2]** To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest. *See Action Apartment*, 509 F.3d at 1026. Logan Neighborhood's "failure-to-protect" and "failure-to-enforce" allegations do not suffice. The Constitution generally does not require the state to "protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 195 (1989). Consequently, the state's failure to protect an individual from "harms inflicted by persons not acting under color of law" will not ordinarily give rise to § 1983 liability. *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998).[5]

---

[4]The claim is ripe for review because the challenged governmental conduct — the city's issuance of a building permit and alleged refusal to enforce the Spokane Municipal Code — has already occurred, and any injuries stemming from that conduct are ongoing. *See Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1232 (9th Cir. 1994); *cf. Action Apartment*, 509 F.3d at 1027.

[5]*DeShaney*'s rule "that members of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by

Logan Neighborhood does not argue that the Dressels were themselves acting under color of law — for example, that they conspired with Spokane officials in pursuit of a common end, *see Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) — when they undertook their construction. *See supra* note 3. Under these circumstances, Spokane had no independent constitutional duty to safeguard the Dressels' neighbors from the negative consequences — economic, aesthetic or otherwise — of the Dressels' construction project. *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994) (citing *DeShaney* and explaining that substantive due process does not generally require government to enforce laws against private wrongdoers); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) (same).

Logan Neighborhood urges that Spokane applied the law improperly and therefore took an affirmative step beyond simply not enforcing it at all. It contends that Spokane unlawfully and arbitrarily issued a building permit to the Dressels because it did not first require them to obtain a certificate of appropriateness and administrative special permit. We do not agree that the issuance of a building permit to the Dressels made their conduct fairly attributable to Spokane in the sense required for § 1983 liability. Without more, Spokane's "[m]ere approval of or acquiescence in" the Dressels' con-

third parties 'is modified by two exceptions: (1) the 'special relationship' exception; and (2) the 'danger creation exception,' " neither of which applies here. *See Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007) (quoting *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992)). When the state has "created a special relationship with a person, as in the case of custody or involuntary hospitalization," we have imposed liability "premised on an abuse of that special relationship." *Grubbs*, 974 F.2d at 121. The danger creation exception, on the other hand, requires affirmative conduct on the part of the state creating a danger that the plaintiff would not have otherwise faced, as when the police reveal an accuser's name after assuring her that she would be warned before any further action was taken. *See, e.g.*, *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1058, 1061 (9th Cir. 2006).

struction is "not sufficient to justify holding [it] responsible for [that construction] under the terms of the Fourteenth Amendment." *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982).[6]

But even if Logan Neighborhood could show, for example, that the decrease in value of its homes caused by the Dressels' construction amounted to a *governmental* deprivation of a property interest — and we hold above that it cannot, on these facts — its substantive due process claim would fail for the independent reason that it has not alleged executive action on Spokane's part that rises to the level of the constitutionally arbitrary. The Supreme Court has "long eschewed . . . heightened [means-ends] scrutiny when addressing substantive due process challenges to government regulation" that does not impinge on fundamental rights. *Lingle*, 544 U.S. at 545; *see also Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir. 1994). Accordingly, the "irreducible minimum" of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose. *North Pacifica LLC*, 526 F.3d at 484; *see Dodd v. Hood River County*, 59 F.3d 852, 864 (9th Cir. 1995). The "exceedingly high burden" required to show that Spokane or its employees behaved in a constitutionally arbitrary fashion has not been met here. *See Matsuda v. City & County of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008) (internal quotation marks omitted).

**[3]** When executive action like a discrete permitting decision is at issue, only "egregious official conduct can be said to be 'arbitrary in the constitutional sense' ": it must amount to an "abuse of power" lacking any "reasonable justification in the service of a legitimate governmental objective." *Lewis*, 523 U.S. at 846; *see City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198 (2003) (rejecting substantive

---

[6]We express no view about whether Spokane's "approval or acquiescence" would suffice to make the city a proximate cause of Logan Neighborhood's alleged damages under, for example, Washington's state law of municipal liability.

due process claim because city engineer's refusal to issue building permits "in no sense constituted egregious or arbitrary government conduct"). Official decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary. *See Collins v. City of Harker Heights*, 503 U.S. 115, 128-30 (1992); *Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006). Logan Neighborhood's contrary, and erroneous, assumption that every state law violation invariably gives rise to a substantive due process claim is inconsistent with the principle that substantive due process is not a "font of tort law" that superintends all official decisionmaking. *See Lewis*, 523 U.S. at 847-48 & n.8.

[4] The conduct Logan Neighborhood alleges — a routine, even if perhaps unwise or legally erroneous, executive decision to grant a third-party a building permit — falls short of being constitutionally arbitrary. There is no suggestion, for instance, of a sudden change in course, malice, bias, pretext or, indeed, anything more than a lack of due care on Spokane's part.[7] *Compare Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1237-38 (9th Cir. 1994) (rejecting substantive due process claim when plaintiff "merely assert[ed]" that decision was arbitrary and pretextual without providing any evidence), *with Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990) (concluding that there

---

[7]The Historic Landmarks Commission has never issued certificates of appropriateness or administrative special permits for properties in the Mission Avenue Historic District. Spokane officials are of the view that the provisions of SMC 11.19.270 are presently inoperative because no "defining characteristics" have been prepared for the Mission Avenue Historic District. The cases suggesting that an individual who has been singled out for differential treatment in an "irrational and wholly arbitrary" manner could bring a substantive due process or "class of one" equal protection claim are therefore inapposite. *Cf., e.g.*, *Engquist v. Oregon Dep't of Agric.*, 128 S. Ct. 2146, 2152-53 (2008) (internal quotation marks omitted); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000); *Valley Outdoor, Inc. v. City of Riverside*, 446 F.3d 948, 955 (9th Cir. 2006); *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988).

was triable issue of fact when city approved project subject to conditions, plaintiff fulfilled those conditions and then city "abruptly changed course and rejected the plan, giving only broad conclusory reasons"). It is "at least fairly debatable" that Spokane rationally furthered its legitimate interest in facilitating residential housing in a residential neighborhood by issuing a building permit to the Dressels. *See Halverson*, 42 F.3d at 1262 (internal quotation marks omitted). When reviewing a substantive due process challenge, this suffices; our task is not to balance "the public interest supporting the government action against the severity of the private deprivation." *Kawaoka*, 17 F.3d at 1228.

**[5]** We reject as an erroneous legal conclusion Logan Neighborhood's assertion that Spokane and its employees acted in a constitutionally arbitrary manner. *See Western Mining Council v. Watt*, 643 F.2d 618, 628-29 (9th Cir. 1981). For this reason, too, we hold that it has not stated a substantive due process claim.

## C.   Procedural Due Process

We are also not convinced by Logan Neighborhood's argument that it has been deprived of procedural due process because it did not have fair notice and an opportunity to be heard before Spokane issued the Dressels a building permit. Logan Neighborhood claims a constitutionally protected property interest in the denial of the permit unless the city "compl-[ied] with the Spokane Municipal Code applicable to historic districts." It contends that the historic preservation provisions obliged Spokane to hold a public "design review taking into account the Mission Avenue Historic District" and complying with the certificate of appropriateness and administrative special permit requirements.[8] Even if Logan Neighborhood's

---

[8]The Spokane Municipal Code directs the "official responsible for processing the application" for "action which may require a certificate of appropriateness" — for example, a building permit — to request review by the Historic Landmarks Commission. *See* SMC 17D.040.240. The ordinance then provides for a public comment period, as well as a noticed public hearing. *See* SMC 17D.040.260(C)(1)-(3).

interpretation of the Spokane Municipal Code is correct —
the parties dispute whether construction in the District is sub-
ject to those additional requirements — it has not stated a via-
ble claim.

The claim is an unusual one; more typically, the plaintiff
asserts that it personally was denied a permit without due pro-
cess of law, not that someone else was granted a permit with-
out the decisionmaker following the procedure established by
state law. *See Gagliardi*, 18 F.3d at 191 (describing argument
as "rather unique"); *see generally Dumas v. Kipp*, 90 F.3d
386, 392 (9th Cir. 1996) (citing *O'Bannon v. Town Court
Nursing Ctr.*, 447 U.S. 773 (1980), and noting distinction
between direct and indirect beneficiaries of government regula-
tion).[9] Assuming without deciding that a property owner *ever*
could have a constitutionally protected interest in the proper
application of zoning restrictions to neighboring properties,
*see id.* at 192, we conclude that Logan Neighborhood's proce-
dural due process claim fails because Spokane's historic pres-
ervation provisions do not "contain[ ] mandatory language"
that significantly constrains the decisionmaker's discretion.
*Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980).

---

[9]Claims premised on the government's treatment of a third-party must
satisfy stringent constitutional standing requirements. *See Lujan v.
Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) ("When . . . a plain-
tiff's asserted injury arises from the government's allegedly unlawful reg-
ulation (or lack of regulation) of *someone else*, much more is needed [to
establish causation and redressability]."). We are satisfied that, at the
pleadings stage, Logan Neighborhood has adequately alleged that its inju-
ries are fairly traceable to Spokane's conduct and that a judgment in its
favor likely would redress those injuries. *See LSO, Ltd. v. Stroh*, 205 F.3d
1146, 1156 (9th Cir. 2000); *Soc'y Hill Towers Owners' Ass'n v. Rendell*,
210 F.3d 168, 176-77 (3d Cir. 2000). Because the defendants do not attack
Logan Neighborhood's prudential standing, any such challenge is waived.
*See Bd. of Natural Res. of State of Wash. v. Brown*, 992 F.2d 937, 945-46
(9th Cir. 1993); *see generally Valley Forge Christian Coll. v. Am. United
for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75 (1982).

**[6]** We apply our conventional analytic framework. *See Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1217 & n.4 (10th Cir. 2003) (rejecting distinction between inquiry for "due process claims brought by a landowner who received an unfavorable decision on its *own* application for a particular land use" and inquiry for claim brought "challeng[ing] the decision . . . to *grant* [a third-party's] proposed land use") (emphasis added); *see also Gagliardi*, 18 F.3d at 192-93. To obtain relief on a procedural due process claim, the plaintiff must establish the existence of "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Not every procedural requirement ordained by state law, however, creates a substantive property interest entitled to constitutional protection. *See Dorr v. County of Butte*, 795 F.2d 875, 877 (9th Cir. 1986); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 764 (2005); *Hayward v. Henderson*, 623 F.2d 596, 597 (9th Cir. 1980). Rather, only those "rules or understandings" that support legitimate claims of entitlement give rise to protected property interests. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Logan Neighborhood does not have a legitimate claim of entitlement to the denial of the Dressels' permit in accordance with the historic preservation provisions. Only if the governing statute compels a result "upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body," does it create a constitutionally protected property interest. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164-65 (9th Cir. 2005); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998) (holding that "specific, mandatory" and "carefully circumscribed" requirements constrained discretion enough to give

rise to property interest). Conversely, "a statute that grants the reviewing body unfettered discretion to approve or deny an application does not create a property right." *Thornton*, 425 F.3d at 1164. There is no protected property interest if "the reviewing body has discretion . . . to impose licensing criteria of its own creation." *Id.* at 1165.

**[7]** We have not been directed to any statutory language that "impose[s] particularized standards . . . that significantly constrain" Spokane's discretion to issue the permits in question and would create a protected property interest in the permits' denial. *See Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1436 (9th Cir. 1986). The Historic Landmarks Commission is to apply "defining characteristics . . . prepared" and "general guidelines established and adopted" by that very same body. The Commission also has the freedom to negotiate "different management standards" for any particular piece of property. In deciding whether to approve an administrative special permit, the director of planning services is to apply "other factors of public interest" in an unspecified way. Moreover, the ordinance requires only that the ultimate decisionmaker "use[ ]" or "consider[ ]" those open-ended criteria; it does not *mandate* any outcome. Finally, we are mindful that, as a matter of Washington law, building codes are not generally construed to impose an affirmative duty upon local governments to initiate compliance actions, and Logan Neighborhood has not directed us to any special features of Spokane's historic preservation ordinance. *See Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 799 P.2d 250, 264-65 (Wash. 1990); *Taylor v. Stevens County*, 759 P.2d 447, 450 (Wash. 1988).[10] We conclude that the historic preservation provisions of the Spokane Municipal Code do not create a constitutionally cogniza-

---

[10]*Cf. Asche v. Bloomquist*, 133 P.3d 475, 479-82 (Wash. App. 2006) (reasoning that plaintiffs "had a property right, created by the . . . [view protection] zoning ordinance, in preventing [their neighbors] from building a structure over" a certain height without their approval).

ble property interest in the denial of a third-party's building permit.

**[8]** From this it follows that Logan Neighborhood's procedural due process claim fails. Absent a substantive property interest in the outcome of procedure, Logan Neighborhood is not constitutionally entitled to insist on compliance with the procedure itself. "To hold otherwise would immediately incorporate virtually every regulation into the Constitution." *Clemente v. United States*, 766 F.2d 1358, 1364 (9th Cir. 1985). The Tenth and Second Circuits rejected very similar claims in *Crown Point I* and *Gagliardi*, respectively. *See Crown Point I*, 319 F.3d at 1216 (plaintiffs alleged property interest in expectation that city would "follow its own mandatory notice and public hearing procedures as set forth in a city code, before depriving a [neighboring] landowner of the use and enjoyment of its property"); *Gagliardi*, 18 F.3d at 193 (plaintiffs "complain[ed] of a lack of notice and contend[ed] that certain affirmative actions were taken without compliance with the procedures established for municipal approval"). As is the case here, the ordinances in question did not significantly limit the municipal defendants' discretion, so no substantive property interest with respect to permitting decisions was thereby created. *See Crown Point I*, 319 F.3d at 1217; *Gagliardi*, 18 F.3d at 192-93. Given this, both courts concluded the plaintiffs could not state a claim for a violation of the Due Process Clause: "The deprivation of a procedural right to be heard, however, is not actionable when there is no protected right at stake." *Gagliardi*, 18 F.3d at 193; *see also Crown Point I*, 319 F.3d at 1217. We agree with the Second and Tenth Circuits' reasoning and hold that Logan Neighborhood does not have a legitimate claim of entitlement to the "design review" allegedly required by the Spokane Municipal Code.

Nothing we say here condones unlawful official action, and we express no view about the legality of Spokane's permitting decision as a matter of state law. *See, e.g.*, Wash. Rev. Code

§ 36.70C.040 (Washington Land Use Petition Act); *Clemente*, 766 F.2d at 1365 (explaining that even when a plaintiff cannot "successfully claim a constitutionally cognizable property interest," it is "well-settled . . . that regulations validly prescribed by an agency are binding upon it"). But we cannot agree with Logan Neighborhood that it has established a violation of the federal Due Process Clause. *Cf. Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 832 n.5 (9th Cir. 2003) (remarking that the courts of appeals do not sit as "super zoning boards or zoning boards of appeals") (internal quotation marks omitted).

## II.    National Historic Preservation Act

**[9]** The district court also correctly dismissed Logan Neighborhood's claim that Spokane and the Dressels violated the National Historic Preservation Act. Section 106 of the NHPA does not create a private right of action against the federal government. *See San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1098-99 (9th Cir. 2005). The reasoning of *San Carlos* has even greater force in suits against private actors, because the NHPA addresses its obligations solely to federal agencies and the recipients of federal funding. *See* 16 U.S.C. § 470e ("The beneficiary of assistance . . . ."); *id.* § 470f ("[A]ny Federal agency . . . ."); *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998); *Lee v. Thornburgh*, 877 F.2d 1053, 1056-57 (D.C. Cir. 1989). Additionally, the NHPA's implementing regulations disclaim any intent to regulate how private property owners use federally listed property. *See* 36 C.F.R. §§ 60.2, 65.2(b). In the absence of any rights-creating language, we agree with the district court that § 106 of the NHPA does not create a private right of action against the defendants. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-84 (2002); *Alexander v. Sandoval*, 532 U.S. 275, 288-89 (2001).

## III.    Spokane Municipal Code

**[10]** Logan Neighborhood lastly contends that its claim under the Spokane Municipal Code independently creates fed-

eral subject matter jurisdiction. A state-law claim invokes 28 U.S.C. § 1331 jurisdiction only if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *see also id.* at 313 (explaining that a "substantial" federal issue is one that "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum"). Logan Neighborhood's state-law claim does not satisfy any of these requirements.

**[11]** First, Logan Neighborhood's state-law claim presents no "necessarily raised" or "actually disputed" federal issue. According to Logan Neighborhood, its claim that Spokane and the Dressels violated the Spokane Municipal Code cannot be decided without looking to the "Secretary of the Interior's Standards for Rehabilitation" and the NHPA itself. This is incorrect. Mission Avenue Historic District's listing on the National Register of Historic Places is not controverted. Spokane has not attempted to apply the Secretary of the Interior's Standards for Rehabilitation to the Dressels' construction. Logan Neighborhood's state-law claim turns entirely on Spokane's compliance with its own municipal code, and does not require the construction or application of federal law.

Second, a federal interest in the availability of a federal forum to adjudicate Logan Neighborhood's state-law claim is also missing. *Cf. Grable*, 545 U.S. at 313. No special need for federal expertise or uniformity is apparent here, particularly because the NHPA does not regulate how private owners make use of listed properties. *Cf. id.* at 315. Logan Neighborhood mistakenly relies on *Stop H-3 Ass'n v. Coleman*, 533 F.2d 434 (9th Cir. 1976), to bolster its argument. There, we merely recognized that Congress took "one step toward implementing the national policy in furtherance of historic

preservation" when it enacted the NHPA.[11] *Id.* at 438. Nothing in that case suggests that a federal forum must be open to hear every claim touching upon the integrity of a federally listed historical landmark.

[12] Third, allowing Logan Neighborhood's state-law claim to go forward in federal court would undermine "Congress's intended division of labor between state and federal courts." *Grable*, 545 U.S. at 319. Although the absence of a private federal right of action is no longer dispositive after *Grable*, it remains relevant to our assessment of the " 'sensitive judgments about congressional intent' that § 1331 requires." *Id.* at 318; *cf. Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 817 (1986). The absence of a private right of action in the NHPA is a "missing welcome mat, required in the circumstances," because acceptance of Logan Neighborhood's argument would result in federal jurisdiction whenever a plaintiff sues on a state law that refers to a concept defined by federal law. *See Grable*, 545 U.S. at 318. This cannot be. Logan Neighborhood's claim under the Spokane Municipal Code does not create federal subject matter jurisdiction.

## CONCLUSION

After *Lingle*, neither *Armendariz* nor its progeny categorically preclude due process challenges to impermissible governmental action that deprives a person of real property. The analysis of a property owner's due process claim does not end there, however. Applying our ordinary Due Process Clause

---

[11]The plaintiffs in *Stop H-3* unremarkably sought enforcement of a federal statute's mandate — § 4(f) of the Department of Transportation Act of 1966 — against a federal agency in federal court. *See id.* at 437-48 (citing 23 U.S.C. § 138(a)). We held that the Secretary of the Interior's determination that a location was eligible for inclusion in the National Register of Historic Places triggered § 4(f)'s applicability notwithstanding a state official's finding that the site had only marginal historic significance. *See id.* at 441.

jurisprudence, we conclude that Logan Neighborhood has not stated a viable due process claim. We also reject Logan Neighborhood's claims under the NHPA and Spokane's Municipal Code.

**AFFIRMED.**